INDIVIDUALS FOR RESPONSIBLE GOVERNMENT, INC., a non-profit Nevada corporation; Janice Buse; Hilary Burson; June Link, individuals, Plaintiffs–Appellants,

v.

WASHOE COUNTY, By and through the BOARD OF COUNTY COMMISSIONERS of the County of Washoe; Dianne Cornwall, Chairman; Larry Beck, Vice Chairman; Gene McDowell; Steve Bradhurst; Independent Sanitation Co., Inc., a Nevada corporation, Defendants–Appellees.

No. 95–17264.

United States Court of Appeals, Ninth Circuit.

Submitted * Feb. 14, 1997.

Decided April 1, 1997.

* The panel finds this case appropriate for submission without argument pursuant to 9th Cir. R. 34–4 and Fed. R.App. P. 34(a).

Marc Picker, Reno, Nevada, for the plaintiffs-appellants.

Melanie Foster, Deputy District Attorney, Reno, Nevada; Frank Cassas, Marshall Hill Cassas & de Lipkau, Reno, Nevada, for the defendants-appellees.

Before SNEED, LEAVY, and THOMAS, Circuit Judges.

SNEED, Circuit Judge:

As happens from time-to-time, this is a case with simple facts whose resolution involves complex legal doctrines. In 1991 and 1992, defendant/appellee Washoe County enacted ordinances that, *inter alia*, require residents in certain unincorporated areas of the County to subscribe to a garbage collection and disposal service offered by defendant/appellee Independent Sanitation Co., Inc. Plaintiffs/appellants Individuals for Responsible Government, Inc., Janice Buse, Hilary Burson and June Link claim that these ordinances violate Nevada statutes and the Commerce Clause of the United States Constitution. They also claim that the County's curbside recycling program violates the Takings Clause of the United States Constitution. The district court granted summary judgment in favor of defendants/appellees on all counts. We affirm.

## I.

### BACKGROUND

Washoe County, Nevada, like many other environmentally concerned communities, confronts a problem stemming from the illegal dumping of trash at sites other than approved dump sites. In response to this problem, the Board of County Commissioners ("Commissioners"), in November 1991, enacted ordinance 838 to amend chapter 90 of the County Code. Ordinance 838 provides that the County and its authorized agents or contractees "have the exclusive right to gather, collect and haul garbage" in certain unincorporated areas in Washoe County. It also provides that "[e]very owner of real property who accumulates or causes the accumulation of garbage ... must subscribe to the [services for] collection, hauling and disposal of garbage" provided by the county through Independent Sanitation Co., its exclusive franchisee.[1]

In April 1992 the Commissioners enacted ordinance 848, which further amends chapter 90 of the County Code. Ordinance 848 creates an exemption from mandatory subscription to Independent Sanitation's garbage service for those owners and occupants of residential dwelling units who prefer to dispose of their own garbage. To qualify for such an exemption, these residents must haul their garbage "to an approved disposal site not less than every 7 calendar days." Independent Sanitation maintains the right to bill, on a quarterly basis, those who have been exempted. However, an exempt resident need not pay the bill provided that he submits to Independent Sanitation "receipts or other proof showing that he has disposed of his garbage at an approve [sic] disposal site for each week within the previous quarter."

The enforcement of ordinances 838 and 848 encountered difficulties. Prior to their passage, approximately 12,000 of Washoe County's 16,000 rural households subscribed to Independent Sanitation's garbage service, while approximately 4000 rural residents elected to dump their own trash. There are two legal dump sites in Washoe County, Nevada: the "Lockwood" landfill, located east of Reno, and the "Reno transfer station," located in the city of Reno. Independent Sanitation and its affiliate Reno Disposal Co. maintain and operate both dump sites. Despite these legal dumping options within Washoe County, prior to enactment of ordinances 838 and 848 many county residents preferred to dispose of their household garbage in California because the dump sites in Susanville and Portola, California were more convenient and cost effective than the options available in Washoe County.

In response to ordinance 848, approximately 400 residents received exemptions from mandatory collection, allowing them to dispose of their own garbage. However, some who initially obtained exemptions later had their exemptions revoked for failure to provide receipts documenting their weekly disposal of garbage. As of August, 1993, Reno Disposal Co. had filed suit in small claims court against 72 Washoe County residents who had failed to pay for their garbage service. Those subjected to suit included at least one person who refused to pay after his exemption was revoked.

Appellant June Link, among others, was angry about being brought into court and ordered to pay for a service that she neither wanted nor believed she needed. Appellants Hilary Burson and Janice Buse also object to being forced to pay for a service they do not want. Hence, in July 1994, appellants filed suit in state court, seeking a declaratory judgment that ordinances 838 and 848 are unconstitutional. Appellees removed the case to federal district court and filed motions for summary judgment. The district court granted appellees' motions for summary judgment in October, 1995. Appellants timely appealed.

## II.

### STANDARD OF REVIEW

The district court had jurisdiction under 28 U.S.C. § 1331 and § 1441. This court has

---

**1.** By means of a contract dated April 14, 1992, the County granted Independent Sanitation an exclusive franchise to "operate all garbage collection and disposal services in the unincorporated areas" of Washoe County. The April 1992 contract amended an earlier, similar contract that had been in force since 1983.

appellate jurisdiction pursuant to 28 U.S.C. § 1291. The district court's grant of summary judgment is reviewed de novo. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

## III.

### THE DORMANT COMMERCE CLAUSE

Appellants claim that ordinances 838 and 848 violate the so-called "dormant" Commerce Clause, which limits the power of states to regulate interstate commerce. Their argument rests on invoking the possible claims of the operators of the California dump sites who are not parties in this proceeding. Such claims might rest on the Supreme Court's decision in *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994), in which an ordinance that required "all solid waste to be processed at a designated transfer station before leaving the municipality," *id.* at 386, 114 S.Ct. at 1680, violated the Commerce Clause because it discriminated against interstate commerce by depriving competitors, including out-of-state firms, of access to a local market. *Id.* at 389, 114 S.Ct. at 1681–82. Their argument appears to be that the ordinance interferes with interstate commerce by preventing them from utilizing dump sites outside the State of Nevada. While we have serious reservations about the strength of this argument, we do not reach the merits of such a claim. Instead, we hold that appellants lack standing to raise a dormant Commerce Clause challenge.

■ First, appellant Individuals for Responsible Government, Inc. is a Nevada nonprofit corporation which appears to lack substance. An association, it is true, has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food and Commercial Workers v. Brown Group*, — U.S. —, —, 116 S.Ct. 1529, 1534,

134 L.Ed.2d 758 (1996) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)). However, the record in this case does not specify who are the members of Individuals for Responsible Government, Inc., nor does it specify the organization's purpose. Absent both purpose and members, it lacks any standing to sue.

The individual plaintiffs, Janice Buse, Hilary Burson, and June Link, lack standing to sue under the "dormant commerce clause." We shall address both the constitutional and prudential requirements for standing to bring this claim.

### A. Constitutional Requirements

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). These are that the plaintiffs must have suffered an injury in fact; that there be a causal connection between the injury and the conduct complained of; and that it be likely that the injury will be redressed by a favorable decision. *Id.* at 560–61, 112 S.Ct. at 2136–37.

■ Individual plaintiffs have met these requirements. They allege that Independent Sanitation has "been aggressively utilizing legal processes to force" them to pay for unwanted garbage collection services. In other words, they have been ordered to pay the bill for a service they do not want. That satisfies the "injury-in-fact" requirement. Moreover, there is a direct causal link between enactment of the challenged ordinances and the fact that appellants have been forced to pay for unwanted garbage collection services. Finally, a declaration that the ordinances are unconstitutional would clearly redress their injuries. Therefore, all three individual appellants meet the minimal constitutional standing requirements.

### B. The Prudential Requirements

■ Apart from the constitutional requirements for standing, there is also a set of prudential principles that bear on the question of standing. *Valley Forge Christian College v. Americans United for Separation*

*of Church and State, Inc.,* 454 U.S. 464, 474, 102 S.Ct. 752, 759–60, 70 L.Ed.2d 700 (1982). One such prudential principle is that the plaintiff's complaint must "fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 475, 102 S.Ct. at 760 (quoting *Association of Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970)). The so-called "zone of interests" test "denies a right of review if the plaintiff's interests are ... marginally related to or inconsistent with the purposes implicit in the [relevant constitutional provision]." *Wyoming v. Oklahoma,* 502 U.S. 437, 469, 112 S.Ct. 789, 808, 117 L.Ed.2d 1 (Scalia, J., dissenting) (1992) (quoting *Clarke v. Securities Industry Assn.,* 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987)).

■ The Supreme Court has applied the zone of interests test most frequently in suits brought under the Administrative Procedure Act. *See, e.g., Air Courier Conference of America v. American Postal Workers Union,* 498 U.S. 517, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991); *Clarke,* 479 U.S. 388, 107 S.Ct. 750, 93 L.Ed.2d 757. However, the zone of interests test also "governs claims under the Constitution in general, and under the negative [dormant] Commerce Clause in particular." *Wyoming,* 502 U.S. 437, 469, 112 S.Ct. 789, 808, 117 L.Ed.2d 1 (Scalia, J., dissenting) (citing *Valley Forge,* 454 U.S. at 475, 102 S.Ct. at 760, and *Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 320–21, n. 3, 97 S.Ct. 599, 602–03, n. 3, 50 L.Ed.2d 514 (1977)).

■ To ascertain whether appellants have standing to raise the dormant Commerce Clause challenge in the present case, it must be determined whether their interests bear more than a marginal relationship to the purposes underlying the dormant Commerce Clause. The chief purpose underlying that Clause is to limit "the power of the States to erect barriers against interstate trade." *Dennis v. Higgins,* 498 U.S. 439, 446, 111 S.Ct. 865, 870, 112 L.Ed.2d 969 (1991). The appellants' injury, however, is solely that Washoe County's garbage collection ordinance forces them "to pay for unnec-

essary and unwanted garbage services." That is an injury not even marginally related to the purposes underlying the dormant Commerce Clause.

Appellants primary contention is that ordinances 838 and 848 impose a barrier to interstate commerce by creating regulatory obstacles for residents of Washoe County who, prior to enactment of the ordinances, transported their garbage across state lines for disposal at the dump sites in Susanville and/or Portola, California.

The facts offered in support of this contention are these. Prior to enactment of the ordinances, approximately 4000 residents of Washoe County chose to dump their own garbage, rather than utilizing Independent Sanitation's collection service. After enactment of the ordinances, the county issued about 400 permits exempting residents from the mandatory garbage collection requirement. Thus, as a result of the ordinances, Independent Sanitation gained about 3600 new customers. Since Independent Sanitation operates two dump sites in Washoe County, it is reasonable to infer that the garbage of all 3600 new customers is now being dumped in Nevada. Prior to enactment of ordinances 838 and 848, some unspecified number of those 3600 customers were dumping their garbage in California.

■ Insofar as they receive garbage from Nevada, the operators of dump sites in California are engaged in interstate commerce. *See Carbone,* 511 U.S. at 389, 114 S.Ct. at 1681–82; *Philadelphia v. New Jersey,* 437 U.S. 617, 621–23, 98 S.Ct. 2531, 2534–35, 57 L.Ed.2d 475 (1978). Because these ordinances have had the effect of reducing the flow of garbage from Nevada to California, they have imposed a small barrier to interstate commerce.

But even on the implausible assumption that all 3600 new customers previously dumped their garbage in California, we hold that the appellants would still not satisfy the prudential "zone of interests test" set forth in *Valley Forge Christian College, supra.* Their injury (being forced to pay for services they do not want) would exist even if Independent Sanitation were to dump all the

garbage it collects from Nevada across the state line in California. Under those circumstances, the Washoe County ordinance would impose no barrier to interstate commerce. Thus, the appellants' interests are, at best, "marginally related to ... the purposes implicit in" the dormant Commerce Clause. *Clarke,* 479 U.S. at 399, 107 S.Ct. at 757. Therefore, appellants lack standing to raise a Commerce Clause challenge because their complaint is not "within the zone of interests to be protected" by that Clause. *Camp,* 397 U.S. at 153, 90 S.Ct. at 829–30.

## IV.

### TAKINGS CLAUSE

Although ordinances 838 and 848 are silent with respect to recycling, Independent Sanitation, in its exclusive franchise agreement with Washoe County, has undertaken an obligation to provide a curbside recycling service for all residential customers. Independent Sanitation bills its customers $1.25 per month for the recycling service, even if they never use the service. Appellants allege that they have a property interest in recyclable materials, as recognized in Nevada Revised Statutes section 444.585. Appellants further allege that the curbside recycling program constitutes a taking of private property for public use without just compensation, in violation of the Takings Clause.

■ Appellants' argument is without merit. Independent Sanitation's curbside recycling service cannot be considered a "taking" of recyclable materials, because residents have no obligation to utilize that service. Residents can legally choose to deliver their recyclable materials to recycling centers, or not to recycle at all. Nor is the $1.25 per month service charge a taking. The service charge is essentially equivalent to a general property tax targeted to fund a specific county-wide service. Hence, it is analogous to a school tax that property owners are required to pay, even though their children do not attend public schools. Such property taxes are not "takings," within the meaning of the Takings Clause.

## V.

### NEVADA STATUTORY CLAIM

■ Appellants' statutory claims are based on Nevada Revised Statutes 244.187 which provides that "[a] board of county commissioners may, to provide adequate, economical and efficient services to the inhabitants of the county and to promote the general welfare of those inhabitants, displace or limit competition in ... [the] collection and disposal of garbage and other waste." Appellants contend that Washoe County's mandatory garbage collection plan is not "adequate, economical and efficient," and that it does not "promote the general welfare." Therefore, appellants contend, Washoe County has exceeded its police powers, and the authority granted to it by NRS 244.187.

In response to this argument, the district court stated:

> This court is not the appropriate body to which to address plaintiffs' complaints regarding the wisdom of the county's decision. If the ordinance was (1) within the scope of the authority granted the county by the state government, (2) aimed at serving some legitimate public purpose and (3) rationally related to that purpose, this court will not second-guess the county government.

We agree. The district court correctly decided that Washoe County's mandatory garbage collection plan satisfies this three-part test. Hence, plaintiffs' police power argument is without merit.

## VI.

### CONCLUSION

We affirm the district court's grant of summary judgment in favor of defendants/appellees.

**AFFIRMED.**