---

**CONCURRENCE**

---

CLAY, Circuit Judge, concurring. I agree with the majority's reasoning and holding as far as it goes, but I would proceed to hold that the County also violated the Commerce Clause by designating Monarch as the exclusive waste hauler and processor for municipal waste. It appears abundantly clear on the record below, and not subject to serious dispute, that the County instituted a comprehensive monopolistic scheme by which it used its regulatory power to favor a single provider of waste removal, disposal and processing services, and by so doing eliminated other potential local and interstate waste services providers from the relevant market. I would not attempt to truncate the analysis with regard to segments of the local waste disposal process, as does the majority opinion, inasmuch as the County awarded a single monopoly to Monarch with respect to all aspects of the waste disposal business in Warren County.

The ordinance and finance agreement favor a single waste hauler and processor to the detriment of both in-state and out-of-state competitors by forcing all who generate waste in Bowling Green to use the services of Monarch at a rate designated by Warren County and Monarch. Given the way in which vertical integration of the waste disposal services are provided by Monarch pursuant to its arrangement with the County for waste collection, hauling, processing and disposal, and given the comprehensiveness of the contractual arrangement between the County and Monarch, I would hold that the County violated the Commerce Clause by designating Monarch as the exclusive waste hauler and processor for municipal waste--notwithstanding the district court's inappropriate failure to address the issue. I concur with the majority opinion in all other respects.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0182P (6th Cir.)
File Name: 00a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---



HUISH DETERGENTS, INC.,
    *Plaintiff-Appellant,*

    *v.*     No. 98-5566

WARREN COUNTY,
KENTUCKY; MONARCH
ENVIRONMENTAL, INC.,
    *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 97-00123—Joseph H. McKinley, Jr., District Judge.

Argued: April 27, 1999

Decided and Filed: May 31, 2000

Before: RYAN, BATCHELDER, and CLAY, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Walter M. Jones, WYATT, TARRANT & COMBS, Louisville, Kentucky, for Appellant. Dennis J. Conniff, BROWN, TODD & HEYBURN, Louisville, Kentucky, for Appellees. **ON BRIEF:** Walter M. Jones,

Stephen D. Berger, Cynthia B. Doll, WYATT, TARRANT & COMBS, Louisville, Kentucky, for Appellant. Dennis J. Conniff, Larisa E. Gilbert, BROWN, TODD & HEYBURN, Louisville, Kentucky, Michael E. Caudill, Bowling Green, Kentucky, for Appellees.

RYAN, J., delivered the opinion of the court, in which BATCHELDER, J., joined. CLAY, J. (p. 20), delivered a separate concurring opinion.

———————————

## OPINION

———————————

RYAN, Circuit Judge. Huish Detergents, Inc., challenges an ordinance enacted by Warren County, Kentucky, and a franchise agreement entered into by Warren County and Monarch Environmental, Inc., pursuant to which Monarch is the exclusive contractor for collecting and processing all the solid waste generated in the city of Bowling Green, Kentucky. Huish's claim is that the ordinance and companion agreement violate both the so-called "dormant" Commerce Clause of the United States Constitution and the Kentucky Constitution. The district court dismissed the suit under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Because we hold that the district court erred in dismissing Huish's Commerce Clause claim, we reverse.

## I.

Warren County, Kentucky, issued a Request for Proposal (RFP) and considered competitive bids from trash haulers interested in collecting and processing all municipal solid waste in Bowling Green, Kentucky. The County awarded the contract to Monarch and formalized the relationship in a written "franchise agreement." Under the franchise agreement, Monarch has the exclusive right for five years (1995-2000) to collect and process all municipal solid waste generated in Bowling Green. Monarch is obligated to operate

purchasing for it. In so doing, the County opened itself up to Commerce Clause scrutiny. The Supreme Court has explicitly "reject[ed] the contention that a State's action as a market regulator may be upheld against Commerce Clause challenge on the ground that the State could achieve the same end as a market participant." *South-Central Timber Dev.*, 467 U.S. at 98-99 (1984); *cf. Chemical Waste Mgt.*, 504 U.S. at 351 (Rehnquist, C.J., dissenting).

Given our holdings in subsections (a) and (b) above, and our understanding that the district court did not specifically address whether the County violated the Commerce Clause by designating Monarch as the exclusive waste collector and processor for municipal waste, it is unnecessary for us to decide this issue here. We note that some courts considering the award of an exclusive waste collecting or processing franchise, following an RFP, focus their inquiry on whether in-state and out-of-state businesses competed on a level playing field. *See, e.g.*, *Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178, 188-89 (1st Cir. 1999); *Atlantic Coast Demolition & Recycling*, 48 F.3d at 713. We express no opinion on this approach or its potential application to the County's ordinance/franchise scheme.

## III.

The district court's dismissal of this action is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this opinion. Because we are reversing the dismissal of the Commerce Clause claim, we also **REVERSE** the dismissal of the section 1983 and state law claims. They too are **REMANDED**.

The County's prohibition on out-of-state disposal, therefore, is subject to the restrictions of the Commerce Clause.

Although *Carbone* dealt with waste processing, its holding applies with equal force to the waste disposal market, compelling the conclusion that the County violated the Commerce Clause by prohibiting out-of-state disposal. *See SSC*, 66 F.3d at 514. This prohibition facially discriminates against out-of-state disposal services which, again, constitutes a *per se* violation sufficient, in and of itself, to survive the Rule 12(b)(6) motion.

### c. Award of "Exclusive Franchise" to a Single In-State Waste Collector and Processor

The district court declined to address the *merits* of Huish's challenge to Monarch's "exclusive franchise" for waste collection and processing on the grounds that the County was a market participant. The court reasoned that the County, through its franchise agreement, effectively "purchased" waste collection and processing services. We respectfully disagree.

The County used its regulatory power—not its proprietary purchasing power—to retain Monarch's services by requiring the County's residents to pay for those services. Stated another way, the County used its regulatory power to grant an exclusive right to collect and process Bowling Green waste, a result that no private party could accomplish on an open market. The district court observed that the County would have been a market participant had it purchased Monarch's services with "its own funds," and reasoned that the exception was still applicable where the County directed its residents to purchase Monarch's services. We agree with the district court that the County could have achieved the same result, without implicating the Commerce Clause, by hiring Monarch as its exclusive waste hauler using public funds to pay for the service. But the County rejected that strategy, opting instead to apply its regulatory leverage by forcing residents to do the

the city's transfer station to process the waste it collects and must dispose of all waste at a landfill "approved and permitted by the State of Kentucky," effectively prohibiting the use of out-of-state disposal sites. The agreement can be renewed for three terms of five years each and will renew automatically for a five-year term absent prior notice by one of the parties.

The franchise agreement provides that all residential, commercial, and industrial entities that generate municipal solid waste in Bowling Green must employ Monarch to remove that waste; waste generators may not remove their own waste, and they are prohibited from using any company other than Monarch. Monarch bills its Bowling Green customers directly according to a fee schedule fixed by the franchise agreement; Monarch is solely responsible for collecting payment. The County receives a portion of the revenues Monarch generates servicing Bowling Green businesses and residents, and Monarch removes the waste generated at the County's own buildings at no charge.

On the same day that the franchise agreement became effective, the County passed an ordinance "executing" the franchise agreement and incorporating its provisions by reference. In essence, the ordinance transforms the franchise agreement provisions into law.

Huish operates a laundry detergent manufacturing facility in Bowling Green. Not surprisingly, this facility generates considerable solid waste. Under the ordinance and franchise agreement, Huish must use Monarch to remove this waste. Huish filed this lawsuit seeking to invalidate the County's ordinance/franchise scheme, claiming that the scheme violates the Commerce Clause , 42 U.S.C. § 1983, and section 164 of the Kentucky Constitution.

The district court dismissed Huish's complaint pursuant to Fed. R. Civ. P. 12(b)(6). The court first concluded that the County is not entitled to Eleventh Amendment immunity and

that Huish has the requisite standing to bring suit. With respect to the Commerce Clause claim, the court took the view that the County engaged in two separate challenged activities:  (1) "taking over" the local waste collection, processing, and disposal markets; and (2) granting Monarch the exclusive right to collect, process, and dispose of waste generated in Bowling Green.

The court began its analysis of Huish's Commerce Clause claim by examining  the County's decision to prohibit residents from independently purchasing waste collection, processing, or disposal services on the open market, which the court described as the County's "takeover" of the local waste collection market. The court held, as a preliminary matter, that the County was not acting as a market participant in taking this action and, therefore, its action was subject to Commerce Clause restrictions. Proceeding with a "dormant Commerce Clause" analysis, the district court concluded that the County's "takeover" of Bowling Green's waste collection, processing, and disposal market did not violate the dormant Commerce Clause. The court reasoned that the "takeover" did not discriminate against interstate commerce and that the burden imposed on interstate commerce was not excessive in relation to the benefits for the County.

As to the second issue, the district court concluded that the County acted as a market participant in awarding an exclusive franchise to Monarch. According to the district court, the County "purchased" waste removal and processing services and was free to choose Monarch as the County's provider of these services. In light of its conclusion that the market participant exception applied, the district court did not address whether the franchise agreement with Monarch ran afoul of the Commerce Clause.

The court then dismissed Huish's federal claims with prejudice and its pendent state law claim without prejudice. This appeal followed.

*Carbone* and discriminated against the interstate flow of waste for processing out-of-state.

Such discrimination constitutes a *per se* violation of the dormant aspect of the Commerce Clause, "absent the clearest showing that the unobstructed flow of interstate commerce itself is unable to solve the local problem." *Carbone*, 511 U.S. at 393. The County's conclusory justification for its actions—that it wanted to assure the "safe and efficient" collection and disposal of solid waste—does not satisfy this stringent test. *See id.* Even if we were to accept these nonspecific goals as legitimate local interests, the County offers no explanation why these goals cannot be satisfied out-of-state. *See Fort Gratiot*, 504 U.S. at 366-67; *Chemical Waste Mgt.*, 504 U.S. at 343-44.

We hold, therefore, that for all these reasons, Huish's Commerce Clause claim survives the defendants' Rule 12(b)(6) motion. While this holding alone requires that we reverse the district court's judgment, we will proceed to consider Huish's remaining arguments, at least to the extent that the district court purported to address them.

### b.  Prohibition on Out-of-State Disposal

The County did not act as a market participant in prohibiting out-of-state disposal of Bowling Green's municipal waste because the County neither bought nor sold disposal services with taxpayer funds. Indeed, even if the County's "agreement" with Monarch constituted market participation in either the waste *collection* or *processing* markets, the market participant exception would not insulate the County's regulation of the separate waste *disposal* market, which is downstream from the collection and processing markets. *See South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 97-98 (1984) (plurality opinion); *SSC*, 66 F.3d at 515-16. *Cf. Incorporated Village of Rockville Centre v. Town of Hempstead*, 196 F.3d 395, 399-400 (2d Cir. 1999).

a municipality labels its action as an "agreement." Rather, we must determine whether the municipality was acting in a proprietary capacity as a purchaser or seller with regard to the challenged action.

Here, it is clear that the County was not acting in a proprietary capacity in forcing all municipal waste to flow through the city's transfer station. The County was not "purchasing" the processing services with public funds, nor was it "selling" its own processing services. These factors routinely govern courts' analysis of the market participant exception in the waste context. *See USA Recycling*, 66 F.3d at 1288-89, 1291; *SSC*, 66 F.3d at 515-16; *GSW, Inc. v. Long Cty., Georgia*, 999 F.2d 1508, 1513-14 (11th Cir. 1993). "A governmental entity which expends or risks no public money . . . is not subject to the vagaries of the market and need be afforded no corresponding freedom" under the market participation doctrine. *See GSW*, 999 F.2d at 1514. By effectively forcing all city residents to purchase the processing services directly from Monarch, the County's action far exceeded that which a private entity could accomplish on the free market. *See SSC*, 66 F.3d at 512-13; *Atlantic Coast Demolition & Recycling, Inc. v. Board of Chosen Freeholders of Atlantic Cty.*, 48 F.3d 701, 717 (3d Cir. 1995). Thus, the market participation exception does not shield Warren County's action from scrutiny under the Commerce Clause.

*Carbone* controls the remainder of our analysis. To be sure, the essentially unitary ordinance/franchise scheme in this case was not identical to the flow control ordinance in Carbone. The county in *Carbone* required that all waste be processed at the town's transfer station. Here, on the other hand, the County "contracted" with Monarch to collect and then process all municipal waste. But the "contract" went further than that. Warren County dictated where Monarch must provide the processing services—at the city's transfer station and nowhere else. This explicit condition is the functional equivalent of the flow control ordinance in

## II.

### A.  STANDING

At the outset, we must address the defendants' contention that Huish lacks standing to bring this action. The defendants claim that, inasmuch as Huish is not a member of the solid waste industry, its injuries do not fall within the zone of interests protected under the Commerce Clause. The district court concluded that Huish has standing, and we agree.

In cases such as this involving a constitutional claim, the plaintiff must satisfy two tests for standing: first, it must meet basic Article III constitutional requirements; and second, the plaintiff's injury must fall within the "zone of interests" protected by the constitutional guarantee.

To establish Article III standing, Huish must demonstrate: (1) an injury in fact that is actual or threatened; (2) a causal connection between the defendants' conduct and the alleged injury; and (3) a substantial likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted) (alteration in original).

We find that Huish satisfies the requirements for standing under Article III, and, indeed, the defendants do not argue otherwise. Huish alleged an actual injury as a result of the County's ordinance and agreement with Monarch, in consequence of which Huish is forced to pay Monarch more to collect, process, and dispose of its waste than Huish would spend if it could purchase one or more of these services from a company operating out-of-state or perform the work itself. The fact that Huish is not a member of the waste industry

does not undermine the causal connection between the challenged scheme and Huish's injury as a consumer.

> [C]ognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a state ultimately discriminates, and customers of that class may also be injured, as in this case where the customer is liable for payment . . . and as a result presumably pays more for the [product] . . . . Consumers who suffer this sort of injury from regulation forbidden under the Commerce Clause satisfy the standing requirements of Article III.

*General Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997). Finally, Huish's injury can be redressed with a favorable result.

Huish must also satisfy a prudential limitation on our jurisdiction—a further standing requirement—by showing that the interest it seeks to protect "arguably fall[s] within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *see also Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). In this case, the constitutional guarantee arises under the Commerce Clause, which is designed to prevent economic protectionism and insure the free movement of goods between State borders, prohibiting "laws that would excite . . . jealousies and retaliatory measures" among the several States. *C & A Carbone, Inc. v. Town of Clarkstown, New York*, 511 U.S. 383, 390 (1994).

Huish argues that it meets this additional standing requirement because it has pleaded an injury that falls within the zone of interests protected by the Commerce Clause, and we agree. Huish seeks to protect its right to contract with a company that can transport its waste for out-of-state processing and/or disposal. In making this claim, Huish is asserting its individual right as a consumer to purchase waste

at one location within Bowling Green; and (2) the prohibition on out-of-state *disposal*. We also note that, while we agree that Monarch acted as the County's "exclusive franchisee" for waste *collection* and *processing* in Bowling Green, the district court erred in characterizing Monarch as the County's "exclusive franchisee" for waste *disposal*. Monarch apparently was not involved in waste disposal at all, but rather purchased these services from a third party.

We identify Huish's three challenges to the ordinance/franchise scheme as follows: (1) the designation of a single in-state processing station for municipal waste; (2) the prohibition on out-of-state waste disposal; and (3) the award of an "exclusive franchise" to Monarch for waste collection and processing. At this stage of the proceedings, Huish's lawsuit can survive the Rule 12(b)(6) motion if any one of these three challenges states a valid Commerce Clause claim.

### a. Designation of a Single In-State Processing Station

The defendants contend that the County acted as a market participant in requiring Monarch to process all municipal waste at a single Bowling Green transfer station. According to the defendants, the challenged restriction is not subject to Commerce Clause scrutiny because it appeared in an "agreement" with Monarch, rather than in an ordinance. We disagree with both the factual and legal premises of this argument and hold that the County was not acting as a market participant when it designated a single in-state processing site for all municipal waste.

First, as a factual matter, the defendants overlook the relationship between the ordinance and franchise agreement scheme. The ordinance *did* contain the challenged restriction because it incorporated the full franchise agreement by reference. More importantly, the distinction that the defendants identify is legally irrelevant. The market participant exception does not come into play simply because

expenditure of state resources) to favor their own citizens—is entirely absent where the States are buying and selling in the market.

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, ___, 119 S. Ct. 2219, 2230 (1999) (citation omitted).

### 3. Huish's Challenges to the Ordinance/Franchise Scheme

To address Huish's Commerce Clause claim, it is imperative that we properly characterize Huish's challenges to the ordinance/franchise scheme. We believe that the district court mischaracterized the challenged activities, and this mischaracterization led to a mistaken analysis. The district court separated Huish's challenges into two categories: (1) the County's "takeover" of the private market for waste collection, processing, and disposal; and (2) the County's award of an exclusive franchise to Monarch for collecting, processing, and disposing of municipal waste. As to (1), the court held that the County was not a market participant and therefore not entitled to the market participation exception, but that its "takeover" of the waste-services market in Bowling Green did not violate the Commerce Clause. As to (2), the court held that the County was acting as a market participant in awarding an "exclusive franchise" to Monarch. Therefore, the court did not proceed to consider whether this "franchise" violated the Commerce Clause.

The district court correctly observed that it must evaluate each challenged activity separately, *see USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1283 (2d Cir. 1995), but having said so, the court failed to do so. Specifically, by grouping several challenged activities together under the heading of a County "takeover," the court overlooked the unique aspects of two provisions of the ordinance/franchise scheme: (1) the requirement that Monarch *process* all waste

processing and disposal services across State boundaries, an interest that falls squarely within the zone of interests protected by the Commerce Clause. The Clause protects not only producers, but also consumers like Huish who "'may look to the free competition from every producing area in the Nation to protect [it] from exploitation by any.'" *Dennis v. Higgins*, 498 U.S. 439, 450 (1991) (quoting *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 539 (1949)).

The defendants rely on two cases from our sister circuits in arguing that Huish's grievance does not satisfy the zone of interests test: *Individuals for Responsible Government, Inc. v. Washoe County*, 110 F.3d 699, 703 (9th Cir. 1997), and *Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1382 (8th Cir. 1997). *Individuals for Responsible Government* involved a challenge to county ordinances that required all residents to purchase garbage collection and disposal services from a company chosen by the county. Unlike the ordinance and agreement in this case, however, the challenged ordinances in *Individuals for Responsible Government* permitted residential customers to opt out of the requirement and dispose of their own garbage, without any restriction on the location of disposal. Residents who elected this self-help option were exempted from paying fees to the county-designated hauler, provided the residents submitted appropriate documentation to the hauler. *Individuals for Responsible Gov't*, 110 F.3d at 701. Three residents who apparently failed to submit the required documentation for the exemption sought a declaratory judgment that the ordinances violated the dormant Commerce Clause. *Id.* at 701-02.

The Ninth Circuit held that *these* residents did not satisfy the "zone of interests" test. *Id.* at 704. The court observed that the ordinances did impose a barrier to interstate commerce by reducing the flow of garbage out of the state, but that the residents' claimed injury—"being forced to pay for services they do not want"—would exist even if the ordinances imposed no barrier to interstate commerce because

all garbage was disposed out-of-state. *Id.* at 703-04. But that is not the case here. Huish's claimed injury—paying a higher cost for in-state waste processing and disposal—*would disappear* if it could hire a waste hauler to transport its waste out-of-state for processing and/or disposal. Thus, *Individuals for Responsible Government* does not contradict our holding.

In *Ben Oehrleins*, the county required all waste haulers to deliver waste to a designated transfer station. The Eighth Circuit held that residential waste generators who challenged the ordinance failed to satisfy the zone of interests test. *Ben Oehrleins*, 115 F.3d at 1381-82. Reasoning that the harm suffered by residential waste generators—having to pay relatively high bills for waste disposal—was "narrow, personal, and strictly local," the court declared that "[l]ocal consumers shouldering the end-line burden of a purely local regulation are not within the zone of interests of the Commerce Clause." *Id.* at 1382.

We find *Ben Oehrleins* to be distinguishable. The *Ben Oehrleins* waste generators did not allege a direct injury; rather, their "sole allegation of injury and claim for relief is that they have incurred increased costs because of enforcement of the designation requirements *against haulers.*" *Id.* at 1379 n.6 (emphasis added). Huish—by challenging the County's restriction on *Huish's* own ability to purchase out-of-state waste processing or disposal services—claims an injury more directly implicating the interests under the Commerce Clause. Moreover, we disagree with the Eighth Circuit's reasoning, at least insofar as it applies to waste generators. As we have explained, waste generators participate *directly* in commerce, and the Commerce Clause guarantees to them access to the interstate market for waste-related services.

For these reasons, we hold that Huish has standing. Because the County does not challenge the district court's holding on Eleventh Amendment immunity, we do not consider that issue here.

U.S. 204, 208 (1983). "There is no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market." *Reeves, Inc. v. Stake*, 447 U.S. 429, 437 (1980). The market participation exception applies equally to States and municipalities. *See White*, 460 U.S. 204. Consequently, if we determine that Warren County was acting as a market participant with regard to any of its challenged actions, we need not proceed to consider whether the actions burdened interstate commerce in violation of the Commerce Clause. *See id.* at 210.

The market participation inquiry is limited to "whether the challenged program constitute[s] *direct* state participation in the market." *Id.* at 208 (internal quotation marks and citation omitted) (emphasis added). The Supreme Court has applied the market participation exception to the dormant component of the Commerce Clause only in cases where the State was spending "its own funds," *see White*, 460 U.S. at 214, *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794 (1976), or selling a resource that it owned or produced, *see Reeves*, 447 U.S. 429. Of course, the State has no funds of "its own," only funds it has exacted from taxpayers and holds in trust for all of its citizens. The reference in these cases is to taxpayer funds in the hands of the State, or in this case, the County. *White*, *Hughes*, and *Reeves* "stand for the proposition that, for purposes of analysis under the dormant Commerce Clause, a State acting in its proprietary capacity as a *purchaser* or *seller* may 'favor its own citizens over others.'" *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Maine*, 520 U.S. 564, 592-93 (1997) (quoting *Hughes*, 426 U.S. at 810) (emphasis added).

The Supreme Court recently observed that the market participation exception

makes sense because the evil addressed by [the Commerce Clause]—the prospect that States will use custom duties, exclusionary trade regulations, and other exercises of governmental power (as opposed to the

## B. RULE 12(b)(6) DISMISSAL

We turn now to Huish's claim that Warren County's ordinance/franchise scheme violates the so-called "dormant" Commerce Clause. Huish argues that it has adequately pleaded a valid Commerce Clause claim on three independent grounds: first, the scheme discriminates against out-of-state waste *processors* by requiring that all municipal waste be processed at the Bowling Green transfer station; second, the scheme discriminates against out-of-state waste *disposers* because it prohibits the disposal of Bowling Green waste outside of Kentucky; and third, the scheme discriminates against the interstate market for waste *collection* and *processing* by designating Monarch, a local business, as the exclusive waste collector and processor for Bowling Green.

We review a Rule 12(b)(6) dismissal *de novo*. *George Fischer Foundry Sys., Inc. v. Adolph H. Hottinger Maschinenbau GmbH*, 55 F.3d 1206, 1208 (6th Cir. 1995). Our duty is to construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "[A] complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (internal quotation marks and citations omitted) (alteration in original).

### 1. The "Dormant" Commerce Clause

The Commerce Clause grants Congress the power to regulate commerce among the States. It reads, with disarming simplicity: "[The Congress shall have Power] [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., art. I, § 8, cl.3. As interpreted by the Supreme Court, the Clause, by negative implication, restricts the States' ability to regulate interstate commerce. *See CTS Corp. v. Dynamics Corp. of*

---

finance the transfer station, the town guaranteed a minimum waste flow to the station and permitted the contractor to charge a "tipping fee" to haulers depositing waste at the station. The town chose the flow control ordinance as the mechanism for ensuring the minimum waste flow.

Carbone operated a recycling center of its own in Clarkstown, performing functions equivalent to those performed at the new transfer station. Carbone challenged the flow control ordinance on dormant Commerce Clause grounds. In its defense, Clarkstown pointed to its need to finance the transfer station. *Id.* at 386. The Court sided with Carbone. The Court explained that by preventing any company "except the favored local operator" from processing waste generated in the town, the flow control ordinance deprived out-of-state businesses of access to the local market. *Id.* at 389. In other words, the offending ordinance "hoards solid waste, and the demand to get rid of it, for the benefit of the preferred processing facility." *Id.* at 392. The Court held that the ordinance's discrimination against out-of-state waste processors was *per se* invalid, rejecting Clarkstown's argument that it had no other means to advance its interest in ensuring the long-term viability of the transfer facility. *Id.* at 392-94.

The reach of the Commerce Clause into the waste industry extends not only to waste *processing*, but also to waste *disposal*. *See Fort Gratiot*, 504 U.S. 353; *Chemical Waste Mgt., Inc. v. Hunt*, 504 U.S. 334 (1992); *City of Philadelphia*, 437 U.S. 617. *Carbone* teaches us that a State cannot "hoard" solid waste by prohibiting or restricting the flow of waste to an out-of-state disposal facility.

### 2. The Market Participation Exception

So-called dormant Commerce Clause principles are not implicated when the State's activity can be characterized as "market participa[tion]," rather than market regulation. *White v. Massachusetts Council of Constr. Employers, Inc.*, 460

*Am.*, 481 U.S. 69, 87 (1987).  There is, of course, no "dormant" clause to be found in the text of clause 3 of section 8 of article I.  Clause 3 *is* the Commerce Clause; the judge-made notion that a negative implication is subsumed in the affirmative declaration of clause 3 that Congress has power "[t]o regulate Commerce . . . among the several States" should more properly be called the dormant *aspect* or *component* of the Commerce Clause.  But it is too late in the day to rewrite the substantial case law that speaks, however inaccurately, of "the dormant Commerce Clause."  Instead, we can only yield to this inaccurate but settled usage.

The Supreme Court has interpreted the Commerce Clause to "prohibit[] States from 'advanc[ing] their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state.'"  *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources*, 504 U.S. 353, 359 (1992) (quoting *H.P. Hood & Sons*, 336 U.S. at 535).  And this court, among others, has construed the Clause as limiting the regulatory activity of counties and cities as well as States.  *Waste Mgt., Inc. of Tennessee v. Metropolitan Gov't of Nashville and Davidson Cty.*, 130 F.3d 731, 735 (6th Cir. 1997), *cert. denied*, 523 U.S. 1094 (1998).  Thus, where this opinion refers to "States," the defendant, Warren County, is included in this designation.

If an ordinance discriminates against interstate commerce by treating in-state and out-of-state interests differently, benefitting the former and burdening the latter, it is *per se* invalid unless the State has "no other means to advance a legitimate local interest."  *Carbone*, 511 U.S. at 392; *see also Waste Mgt.*, 130 F.3d at 735.  On the other hand, if the law regulates evenhandedly, it will be upheld unless the burden it imposes on interstate commerce is "'clearly excessive in relation to the putative local benefits.'"  *Carbone*, 511 U.S. at 390 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

As a preliminary matter, there is no question that a State law restricting the interstate travel of waste implicates the Commerce Clause, and, as we have indicated, this is equally so of a local ordinance.  Any doubt about this fact was laid to rest by the Supreme Court in 1978.  *City of Philadelphia v. New Jersey*, 437 U.S. 617, 621 (1978).  Since then, the Court has reiterated that garbage is not valuable, in and of itself, but it is a "profitable business" because "its possessor must pay to get rid of it.  In other words, the article of commerce is not so much the solid waste itself, but rather the service of [collecting], processing and disposing of it."  *Carbone*, 511 U.S. at 390-91.

Whether the business arrangements between . . . generators of waste and the . . . operator of a waste [processing or] disposal site are viewed as sales of garbage or purchases of transportation and disposal services, the commercial transactions unquestionably have an interstate character.  The Commerce Clause thus imposes some constraints on [a State's] ability to regulate these transactions.

*Fort Gratiot*, 504 U.S. at 359 (internal quotation marks omitted).  Indeed, one of our sister circuits has observed that federal courts are now clogged with cases challenging restrictions on waste-related services, making garbage the modern legal battleground over the Commerce Clause.  *See SSC Corp. v. Town of Smithtown*, 66 F.3d 502, 505 (2d Cir. 1995).

In *Carbone*, 511 U.S. 383, the Supreme Court held that a so-called flow control ordinance that required all solid waste in the town to be processed at a designated transfer station before leaving the town violated the dormant Commerce Clause.  The town of Clarkstown, New York, had agreed to close its landfill and build a new solid waste transfer station.  *Id.* at 387.  A local private contractor constructed the transfer station and agreed to operate it for five years, at which time the town would buy the station for a nominal price.  *Id.*  To