BARRY, Circuit Judge,
dissenting.
I cannot agree with the majority that the Building Owners have demonstrated that their interests are arguably within the zone of interests intended to be protected by the Commerce Clause and, thus, that they have standing to bring their dormant Commerce Clause claim. The Building Owners did not participate in any interstate commerce decision — where, for example, their waste was to be tipped' — and allege only that as a result of the “economic disincentives” that result from the zero tipping fee, the Waste Generation System interferes with their haulers’ ability to participate in interstate commerce. It is, they say, an “obvious conclusion that the haulers will dispose of waste only where there is no tipping fee — the [Montenay] Facility.” Third Amended Comp., ¶ 117. As a result, they continue, they are effectively compelled to dispose of their waste only at that local facility rather than at more affordable out-of-state facilities. This is simply not enough for a dormant Commerce Clause challenge, and I respectfully dissent.
The general dormant Commerce Clause cases as well as the more specific waste disposal dormant Commerce Clause cases discussed by the majority support my conclusion that in-state plaintiffs lack prudential standing to bring a dormant Commerce Clause claim where they allege only that a party with whom they contract is subject to an undue burden on its ability to freely participate in interstate commerce.[1] In the “general” category, the Supreme Court has considered dormant Commerce Clause challenges brought by in-state companies whose ability to freely contract with out-of-state companies was directly infringed by a local regulation. See, e.g., Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997) (in-state camp subject to state real and property tax waged successful dormant Commerce Clause challenge as it was the party against whom the tax was assessed and its ability to contract was directly burdened); General Motors Corp. v. Tracy, 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997) (in-state company subject to state sales and use tax had standing to bring dormant Commerce Clause challenge where it paid the tax and the tax scheme affected its contract with an out-of-state gas provider); West Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994) (in-state milk producer waged a successful dormant Commerce Clause challenge where it was subject to a discriminatory tax and was a party to the transactions which were burdened). Although standing was not directly addressed in Camps and West Lynn, in all of these cases the in-state companies were within the. “zone of interests” of the dormant Commerce Clause because they *150 “sought to protect their own rights to purchase goods or do business across state borders, without being subject to a discriminatory tax.” Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, 115 F.3d 1372, 1381 (8th Cir.1997).
Waste disposal cases from courts of appeals which have considered the issue have explicitly or implicitly come to the same conclusion. See On the Green Apartments L.L.C. v. City of Tacoma, 241 F.3d 1235 (9th Cir.2001); Huish Detergents, Inc. v. Warren County, Kentucky, 214 F.3d 707 (6th Cir.2000); Individuals for Responsible Gov’t, Inc. v. Washoe County, 110 F.3d 699 (9th Cir.1997); Ben Oehrleins, supra. In these cases, albeit for different reasons, the courts recognized a waste generator’s standing to bring a dormant Commerce Clause claim where the waste generator alleged that its ability to contract directly with the hauler or processor of its choice was infringed by local regulation. On the Green and Huish Detergents, on which the majority relies, are two such cases. Where, however, the waste generator did not allege that its ability to contract directly with its hauler or processor of choice was infringed and instead asserted only that its injury was higher cost in-state services or some injury derivative of its hauler’s injury, the waste generators were found to lack standing. Washoe County, supra; Ben Oehrleins, supra. Indeed, the On the Green Court relied on Washoe County when it found that the waste generator lacked standing with regard to its second claim, i.e. a claim of financial injury merely because it was forced to pay for unwanted services. Although the courts did not always articulate the importance of direct involvement in the relevant interstate commerce decision and injury related to the dormant Commerce Clause, those considerations clearly run through each of these cases.
In Huish, for example, the Sixth Circuit held that the waste generator who was subject to a local regulation which required it to send all of its waste to a designated facility had standing because it sought “to protect its right to contract with a company that can transport its waste for out-of-state processing and/or disposal.” Huish, 214 F.3d at 710-711 (emphasis added). The Huish Court also held that the waste generator’s direct participation in the sought after out-of-state transaction distinguished Huish from the Sixth Circuit’s decision in Ben Oehrleins. Id. at 711. In On the Green, standing was found as to a waste generator who was a self-hauler who alleged that it could not contract freely with out-of-state processors but, rather, was required to haul only to a city landfill. In contrast, in Washoe County and Ben Oehrleins — and in the payment for unwanted services claim in On the Green — the waste generators who lacked standing did not allege any direct participation in the subject interstate commerce decision and alleged only that they were subject to higher fees because of a local ordinance. While I do not contend that this is the only difference in these cases, it is a difference, I believe, of utmost importance to the standing question.
The Building Owners fall into the latter category. For starters, they do not allege that their ability to contract directly with the hauler of their choice — even an out-of-state hauler — is at issue in this case and, unlike the waste generators in Huish and On the Green, they are not, as the majority suggests, compelled to patronize the local market. Rather, the transaction at issue here is the processing decision— where the waste ends up. The Building Owners claim that the haulers with whom they contract are put in an untenable position when they, the haulers, decide where to tip the waste- — -“untenable” (although that hardly seems the right word) because *151 they tip for free and thus it is “obvious” they will tip at the Montenay facility. The Building Owners do not allege any involvement in the decision making process to determine where their waste is tipped, nor do they allege that they seek to become self-haulers and make this decision for themselves. Accordingly, even accepting the Building Owners’ allegations as true, I conclude that any injury they suffer is derivative of their haulers’ injury and they are one step removed from the interstate transaction or decision which is allegedly burdened. Their interests, therefore, are too marginally related to the purpose behind the dormant Commerce Clause for them to have standing.
Nor am I convinced, as the majority seems to be, that the Waste Generation Fee itself confers standing on the Building Owners. If this case were akin to Camps or General Motors, in which a party involved in the interstate decision was assessed a discriminatory tax, I would not be writing this dissent. Here, however, the Building Owners are merely consumers of hauling services who are subject to a flat fee for services they may not or do not want. Without even an allegation that they are also parties to the transaction or decision they claim is burdened or that their ability to contract directly with an out-of-state company is adversely affected, the injury of which the Building Owners complain is simply not within the zone of interests the Commerce Clause was intended to protect. I would affirm.

. In this connection, the argument that the haulers here — who tip without payment of any fee — are ''burdened” at all is somewhat hard to understand.