ON THE GREEN APARTMENTS L.L.C., a Washington limited liability company, Plaintiff–Appellant,

v.

CITY OF TACOMA, Pierce County Washington, a municipal corporation, Defendant–Appellee.

No. 98–35976.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 20, 2000

Filed March 12, 2001

Jackson Schmidt (argued), Pepple Johnson Cantu & Schmidt, PLLC, Seattle, Washington, for the plaintiff-appellant.

Robin Jenkinson, Elizabeth Pauli, Leah Whitman (argued), City Attorney's Office, Tacoma, Washington, for the defendant-appellee.

Before: REAVLEY,[1] O'SCANNLAIN, and GOULD, Circuit Judges.

Opinion by Judge O'SCANNLAIN; Concurrence by Judge REAVLEY

O'SCANNLAIN, Circuit Judge:

We must decide whether a municipal ordinance violates the Commerce Clause by restricting the ability of residents and businesses to haul their own garbage and by requiring them to use a city owned and operated landfill.

## I

On the Green Apartments, L.L.C. ("On the Green") operates a 545–unit residential complex located in the City of Tacoma, Washington. On the Green wishes to haul the garbage generated by the inhabitants of its apartments to landfills outside Tacoma. By municipal ordinance, however, Tacoma requires that all businesses and residents have their waste collected by its Solid Waste Utility. Certain classes of residents and businesses may petition the city for a special permit allowing them to haul their own waste. Tacoma further requires that all waste, whether collected by the city or self-hauled, must be deposited at the city's public disposal area.

On the Green alleges that by hauling its own garbage and disposing of it at landfills outside the city, it would save a considerable amount of money because the fees the city charges for these services are higher than what it would cost On the Green to self-haul. In December 1997, On the Green petitioned Tacoma for a special permit to haul its own waste and for permission to bring its garbage to a landfill outside the city. Tacoma denied On the Green's request, stating that it did not qualify for a permit under the terms of the ordinance.

On the Green then filed this action in the United States District Court for the Western District of Washington alleging that Tacoma's waste disposal law violates the Commerce Clause of the United States Constitution by discriminating against interstate commerce. Tacoma filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). On September 2, 1998, the district court granted Tacoma's motion, concluding that because the city eliminated the garbage collection and disposal market entirely by providing collection and disposal services to its residents,

---

1. The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

it did not discriminate against interstate commerce.

On the Green timely filed this appeal.

## II

### A

Acting under its inherent police powers, Tacoma has adopted a comprehensive Solid Waste, Recycling and Hazardous Waste Ordinance ("Ordinance"). *See* Tacoma Municipal Code ("TMC") Ch. 12.09. The Ordinance prohibits "any person other than the Solid Waste Utility to engage in the business of collection, removing, and disposing of solid waste in the City of Tacoma, or ... to engage in the activities required by this chapter to be accomplished by the Solid Waste Utility" without obtaining a special permit available only to a limited class of entities. *See id.* at § 12.09.020. Certain classes of residents and businesses may apply for a special permit to haul their own waste, but must dispose of this self-hauled waste at the city dump:

> The Solid Waste Utility may issue special permits for the following reasons only ...: (7) For a business, company, corporation, church, apartment, or other nonresidential commercial enterprise to haul solid waste generated as a result of activity at their premises; provided, that the following conditions are met: ... (c) The waste, if acceptable, shall be disposed of at the City's public disposal area.

*Id.* at § 12.09.070. Transporting the waste outside the city without written approval or any garbage hauling without a Special Permit is a misdemeanor. *See id.* at § 12.09.050; § 12.09.070. On the Green alleges that Tacoma's Ordinance, by preventing it from hauling its own garbage and by requiring self-haulers to tip their refuse at the city dump, offends the Commerce Clause. It challenges both the collection and disposal aspects of the city's system.

### B

██ By its terms, the Constitution grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST. art. I, § 8, cl. 3. By negative implication, the Supreme Court has interpreted the Commerce Clause "not only as an authorization for congressional action, but also, even in the absence of a conflicting federal statute, as a restriction on permissible state regulation." *Hughes v. Oklahoma*, 441 U.S. 322, 326, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979). Despite the pedigree of this doctrine, *see Case of the State Freight Tax*, 15 Wall. 232, 21 L.Ed. 146 (1872), it has come under considerable criticism for its lack of textual and theoretical foundation, *see, e.g., Tyler Pipe Indus., Inc. v. Washington State Dep't of Revenue*, 483 U.S. 232, 259–64, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987) (Scalia, J., concurring in part and dissenting in part).

██ This " 'negative' or 'dormant' aspect of the Commerce Clause prohibits States from 'advanc[ing] their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state.'" *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Res.*, 504 U.S. 353, 359, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992) (quoting *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535, 69 S.Ct. 657, 93 L.Ed. 865 (1949)). The restrictions of this doctrine apply, of course, to the actions of municipalities such as Tacoma as well as to those of states. *See C & A Carbone, Inc. v. Clarkstown*, 511 U.S. 383, 390, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). "The central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent." *Id.*

## III

■ On the Green first challenges Tacoma's refusal to allow it to self-haul (i.e., the collection monopoly aspect of the Ordinance).[2] Before reaching the merits of On the Green's Commerce Clause challenge, we must assure ourselves that it has standing to maintain this action. *See Individuals for Responsible Gov't, Inc. v. Washoe County,* 110 F.3d 699 (9th Cir. 1997). In order to meet the requirements for standing, On the Green must have suffered an injury in fact as a result of the conduct complained of, which would be redressed by a decision in its favor. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Washoe,* 110 F.3d at 702. In addition, On the Green must satisfy the prudential component of standing; that is, its "complaint must 'fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Washoe,* 110 F.3d at 702–03 (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)); *see also Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County,* 115 F.3d 1372, 1381–82 (8th Cir.1997) (holding that waste generators do not have standing to bring suit alleging that ordinance requiring haulers to bring waste to a single facility violates the Commerce Clause); *Houlton Citizens' Coalition v. Houlton,* 175 F.3d 178, 182–83 (1st Cir.1999) (discussing, but not deciding the issue). Generally, private garbage haulers and landfills excluded from the market, not waste generators like On the Green, have brought these types of challenges under the Commerce Clause. *See, e.g., Carbone,* 511 U.S. at 387, 114 S.Ct. 1677.

### A

■ On the Green alleges financial injury. It claims that by being prevented from hauling its own garbage it is forced to pay the higher fees charged by the city. On this motion to dismiss pursuant to Rule 12(b)(6), we accept its allegations of fact as true. *See Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1085 (9th Cir.1998). Thus, the challenged ordinance causes On the Green's injury and a holding that the statute is unconstitutional and unenforceable would redress this injury.

### B

Although On the Green has satisfied the "irreducible constitutional minimum of standing," *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130, it must still satisfy the prudential component of standing, *see Washoe,* 110 F.3d at 702–03. On the Green's "complaint must fall within the zone of interests to be protected or regulated by the" Commerce Clause. *Id.* at 703 (internal quotations omitted). In *Washoe,* we held that waste generators (i.e., households and businesses) lacked standing to challenge a municipal waste control ordinance for failure to satisfy the prudential component. *See id.* at 703–04. In that case, the ordinance forced residents, who previously hauled their own garbage to sites both in and out of state, to have their garbage collected by an exclusive franchisee of the local government. *See id.* We held that the plaintiffs lacked standing because their injury-being forced to pay for unwanted garbage services-was "not even marginally related to the purpose[ ] underlying the dormant Commerce Clause," that is, "to limit the power of the States to erect barriers against interstate trade." *Id.* at 703 (quotations omitted). We relied heavily on the fact that the plaintiffs' injury would continue even if the waste collector used only landfills outside the state. *See id.* at 703–04.

Like that of the plaintiffs in *Washoe,* On the Green's complaint here is that it is forced to pay for waste disposal services it

---

2. On the Green challenges the prohibition of self-hauling under the Commerce Clause only; it makes no due process argument regarding the permit-granting procedure nor challenges the city's designation of classes of entities eligible for this permit.

would like to provide for itself. And similarly, its financial injury is unrelated to the purposes animating the dormant Commerce Clause jurisprudence. *See id.* at 703. Like the *Washoe* plaintiffs, On the Green would be forced to pay for garbage services it did not want "even if [Tacoma] were to dump all the garbage it collects from [the city] across the state line.... Under those circumstances, the [Ordinance] would impose no barrier to interstate commerce." *Id.* at 703–04. Thus, On the Green's "interests are, at best, 'marginally related to ... the purposes implicit in' the dormant Commerce Clause." *Id.* (quoting *Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987)). Accordingly, we must conclude, in light of *Washoe,* that On the Green lacks standing to challenge that aspect of the Tacoma Ordinance prohibiting it from hauling its own garbage.

## IV

■ On the Green next challenges Tacoma's requirement that self-haulers tip their garbage at the city's dump (i.e., the disposal monopoly aspect of the Ordinance). Again, we must first consider whether On the Green has standing to challenge this provision of the law. Whether On the Green has standing depends in part on whether it qualifies as a self-hauler under the terms of the Tacoma Ordinance.

On the Green alleges that because self-haulers are prevented from disposing their waste in landfills other than that operated by Tacoma, self-haulers are forced to pay the higher tipping fees charged by the city. If On the Green does not qualify as a self-hauler under the law, however, it does not have standing to challenge this aspect of the Ordinance.[3] Tacoma's ban on self-haulers' disposing of their own garbage

elsewhere would not cause On the Green any injury unless it is otherwise qualified to self-haul.[4] In other words, if On the Green prevailed it would still not be able to dump its own garbage at landfills outside the city because it would be barred from hauling its own garbage at all.

Although it does not frame the argument in the context of standing, Tacoma argues that by the terms of the Ordinance On the Green does not qualify for a self-haul permit. Whether On the Green falls within the Ordinance's designation of who may self-haul turns on whether On the Green, a company that owns and manages a residential apartment complex, is "a business, company, corporation, church, apartment, or other nonresidential commercial enterprise." TMC § 12.09.070(C)(7). On the Green would appear to qualify as either a business or company, but Tacoma contends that the Ordinance's inclusion of the phrase "other nonresidential commercial enterprise" implies that the law excludes residential commercial enterprises, such as On the Green's. On the Green responds that even if this is the case, its operation falls within the term "apartment." Specifically, On the Green argues that because the Ordinance later refers to the listed entities as "organizations," the term "apartment" must mean (or at least include) apartment complexes.

We are persuaded that On the Green's apartment complex falls within the Ordinance's designation of potential self-haulers. Tacoma's reliance on the "other nonresidential commercial enterprise language" is unconvincing. First, "other nonresidential commercial enterprise" does not follow from the list of entities that precedes it. Apartments and churches are not nonresidential commer-

---

3. Again, On the Green does not raise any challenges to the Ordinance's designation of which classes of entities may self-haul or to the procedures for applying for a permit.

4. Because we have concluded that On the Green lacks standing to challenge Tacoma's

restriction on who may self-haul, we assume that that portion of the Ordinance is valid for the purposes of analyzing the constitutionality of the city's requirement that self-haulers use only the city landfill.

cial enterprises; they are not "commercial enterprises" at all, and at least the apartments are not "nonresidential." Thus the use of the word "other" is unclear; given the remaining listed entities, the phrase does not necessarily exclude apartment complexes. Second, the fact that residential homes are not included in the list of entities qualified to self-haul suggests that the term "apartments" in the list refers to apartment complexes. There appears to be no reason why Tacoma would allow single apartment dwellers to self-haul, but not homeowners. Third, an apartment complex, not an individual apartment, is an "organization," as the Ordinance later refers to the listed entities. Thus we conclude that, by the terms of the Ordinance, On the Green could qualify as a self-hauler. Accordingly, the Ordinance's requirement that self-haulers bring their waste to the city dump does cause On the Green financial injury that would be redressed by a favorable decision on the merits. On the Green meets the constitutional standing requirements.

Nevertheless, On the Green must once again satisfy the prudential component of standing. See Washoe, 110 F.3d at 702–03. Like the plaintiffs in Washoe, On the Green's complaint here is that it is forced to pay higher prices to dispose of its garbage at the city dump. In Washoe, however, we placed significant weight on the fact that the plaintiffs' injury would continue even if the garbage collectors dumped all their garbage out of state. See id. at 703. That is not the case in this part of On the Green's action. Here, it challenges the requirement that self-haulers dispose of their garbage at the city dump. On the Green has alleged that it would pay substantially less to dump at other landfills. Hence, On the Green's injury would be remedied if it could take its garbage outside the city. See Huish Detergents, Inc. v. Warren County, 214 F.3d 707, 710–12 (6th Cir.2000) (holding that a waste generator had standing where its alleged injury would vanish if it succeeded in its challenge and could dispose its trash outside

the state). As On the Green's injury is thus related to the purposes underlying the Commerce Clause, it has satisfied the prudential component of standing with respect to its challenge to Tacoma's requirement that self-haulers tip at the city dump.

V

We turn now to the merits of On the Green's action. At the outset, we must determine whether Tacoma's Ordinance implicates the Commerce Clause at all. See Carbone, 511 U.S. at 389, 114 S.Ct. 1677. "It is well settled that actions are within the domain of the Commerce Clause if they burden interstate commerce or impede its free flow." Id. The flow control ordinance at issue in Carbone directed the local transportation of solid waste including waste originating from out of state to a designated site within the town. Carbone, 511 U.S. at 389, 114 S.Ct. 1677. As the Court noted, this requirement "drives up the cost for out-of-state interests to dispose of their solid waste ... [and] ... deprives out of state businesses of access to a local market." Id. Based on these out-of-state economic effects, the Court concluded that the ordinance burdened interstate commerce. Id.

While Tacoma's ordinance does not require that the local transportation of out-of-state waste be deposited at a site in the city, it does prevent waste from within the city from being deposited outside of the city. Of course, theoretically, the ordinance also prevents waste from being deposited outside of the state; we cannot assume, however, without more, that this interstate burden exists.

On the Green has alleged that were it not for Tacoma's ordinance, it would "self-haul the waste generated at its property to a landfill outside of Tacoma, either in Pierce County or King County." (emphasis added). Absent the ordinance, On the Green would tip its waste at another landfill inside the state of Washington; thus, the Tacoma ordinance cannot be said to burden interstate commerce or impede its

free flow. Here, the impact of the ordinance is exclusively on intrastate commerce. Furthermore, describing the burden of the ordinance on others, On the Green states that the ordinance burdens interstate commerce by "depriving landfills in King and Pierce County of access to Tacoma's waste." Again, this burden is exclusively intrastate in nature. On the Green's allegations do not leave room for this court to assume that the ordinance implicates the Commerce Clause.

 Where, as here, the plaintiff alleges only an intrastate burden, a court cannot manufacture an interstate burden to implicate the Commerce Clause. This is not to say that a plaintiff challenging a similar ordinance must explicitly plead that it would tip its waste out of state in order to make a Commerce Clause challenge. However, where a complaint alleges only an intrastate burden, then the Commerce Clause is not at all implicated. Because On the Green alleges only that absent the Tacoma ordinance it would deposit its waste in another city in Washington, the Commerce Clause is not implicated.

### VI

Although On the Green lacks standing to raise a Commerce Clause challenge to Tacoma's prohibition on self-hauling, it meets both the constitutional and prudential aspects of standing to challenge Tacoma's requirement that self-haulers tip their garbage at the city landfill. Because On the Green has simply alleged that absent the Tacoma ordinance it would tip its garbage at another landfill within the State of Washington, we conclude that the Commerce Clause is not implicated. Accordingly, we affirm the district court's ruling, although on different grounds.

AFFIRMED.

REAVLEY, Circuit Judge, specially concurring:

I would hold that On the Green lacks standing to contest the tipping requirement for the reason, as the panel holds, that the allegations do not implicate the Commerce Clause. I concur in the judgment.