**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF LOS ANGELES; ORANGE
COUNTY SANITATION DISTRICTS;
RESPONSIBLE BIOSOLIDS
MANAGEMENT, INC.; R & G
FANUCCHI INC.; SIERRA TRANSPORT
INC.; CALIFORNIA ASSOCIATION OF
SANITATION AGENCIES; SHAEN
MAGAN, individually and dba's
Honey Bucket Farms; Tule
Ranch/Magan Farms; WESTERN
EXPRESS INC.,

        *Plaintiffs-Appellees,*

      and

KERN COUNTY WATER AGENCY;
ASSOCIATION OF IRRITATED
RESIDENTS; ARVIN-EDISON WATER
STORAGE DISTRICT; KERN WATER
BANK AUTHORITY,

        *Intervenors,*

      v.

COUNTY OF KERN; KERN COUNTY
BOARD OF SUPERVISORS,

        *Defendants-Appellants.*

No. 07-56564

D.C. No.
CV-06-05094-GAF

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted March 2, 2009
Submission vacated March 19, 2009
Resubmitted September 9, 2009
Pasadena, California

12859

Filed September 9, 2009

Before: Diarmuid F. O'Scannlain, Pamela Ann Rymer, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Steven L. Mayer, Howard Rice Nemerovski Canady Falk & Rabkin, San Francisco, California, argued the cause for defendants-appellants and filed the briefs. Jerome B. Falk, Jr. and Adam Polakoff, Howard Rice Nemerovski Canady Falk & Rabkin, San Francisco, California; Bernard C. Barmann and Stephen D. Schuett, County of Kern, Bakersfield, California; and Michael M. Hogan, Hogan Guiney Dick LLP, San Diego, California, were also on the briefs.

Thomas S. Hixon, Bingham McCutchen LLP, Los Angeles, California, argued the cause for plaintiffs-appellees and was on the briefs. James J. Dragna and Marc R. Bruner, Bingham McCutchen LLP, Los Angeles, California; Rockard J. Delgadillo, Christopher M. Westhoff, and Keith W. Pritsker, City of Los Angeles, Los Angeles, California; James B. Slaughter and Gary J. Smith, Washington, District of Columbia; Daniel V. Hyde and Paul J. Beck, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California; Bradley R. Hogin, Woodruff Spradlin & Smart, Orange, California; Michael J. Lampe, Law Offices of Michael J. Lampe, Visalia, California; and Roberta L. Larson and Jonathan Schutz, Somach Simmons & Dunn, Sacramento, California, were also on the briefs.

James Sullivan, Water Environment Federation, Alexandria, Virginia, filed a brief on behalf of Amicus Curiae Water Environment Federation.

Keith J. Jones, National Association of Clean Water Agencies, Washington, District of Columbia, filed a brief on behalf of Amicus Curiae National Association of Clean Water Agencies. Nathan Gardner-Andrews, National Association of Clean Water Agencies, Washington, District of Columbia, was also on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether recyclers challenging a local ordinance that bans a particular method of waste disposal have prudential standing to raise its constitutionality under the dormant Commerce Clause.

I

A

The fact that the subject matter of the case before us involves sewage sludge will be of no surprise to those familiar with the negative implications of the Commerce Clause. For our purposes, sludge is the "solid, semi-solid, or liquid residue generated during the treatment of domestic sewage." 40 C.F.R. § 503.9(w). Here, we deal with the "land application" of "biosolids": essentially, a particular recycling method which involves the use of treated sludge as fertilizer.[1] *See* 40 C.F.R. § 503.11(h) ("Land application is the spraying or spreading of sewage sludge onto the land surface; the injection of sewage sludge below the land surface; or the incorporation of sewage sludge into the soil so that the sewage sludge can either condition the soil or fertilize crops or vegetation grown in the soil.").

In 2006, voters in Kern County, California ("Kern"), adopted a local ordinance ("Measure E" or the "Ordinance")

---

[1]The local ordinance before us defines biosolids as "treated solid, semi-solid or liquid residues generated during the treatment of sewage in a wastewater treatment works and includ[ing] material derived from or containing sewage sludge such as compost and pelletized sewage sludge, irrespective of where generated, produced or treated." The measure describes land application as "the spraying, spreading or other placement of Biosolids onto the land surface, the injection of Biosolids below the surface, or the incorporation of Biosolids into the soil."

by ballot initiative that makes it "unlawful for any person to Land Apply Biosolids to property within the unincorporated area of the County." Violation of the Ordinance is a misdemeanor punishable by "a fine of not more than $500 or by imprisonment of not more than six months." By its terms, the Ordinance applies to both in-county and out-of-county waste generators. In practical effect, however, because Kern does not currently apply its biosolids to land within the county, Measure E does not directly impact Kern's own waste disposal programs.

Prior to the Ordinance, in-state waste generators frequently disposed of their biosolids by land application at various farms throughout the unincorporated area of Kern County.[2] For example, the City of Los Angeles, Orange County Sanitation District, and County Sanitation District No. 2 of Los Angeles County ship large amounts of waste generated by their residents to Green Acres, Honey Bucket Farms, and Tule Ranch. If these generators were precluded from land applying their biosolids in Kern County, they would be required to find alternative locations to dispose of their sludge. They have submitted declarations pointing to Arizona as a probable destination, and asserting that this site change would result in increased transportation costs.

B

These out-of-county generators, along with waste transporters and in-county farmers (collectively, "the recyclers"), filed suit in the United States District Court for the Central District of California. They alleged that Measure E violated the dormant Commerce Clause and the Equal Protection Clause and was preempted by the Federal Clean Water Act, the California Integrated Waste Management Act ("CIWMA"), and the California Water Code. They also asserted that it constituted an

---

[2]Consequently, campaign literature supporting the passage of Measure E claimed that it would "stop L.A. from dumping on Kern."

invalid exercise of Kern's police power. The district court initially dismissed the Clean Water Act and the California Water Code claims under Federal Rule of Civil Procedure 12(b)(6), while granting the recyclers' request for a preliminary injunction halting enforcement of Measure E. The parties filed cross motions for summary judgment.

The district court granted Kern's motion for summary judgment on the recyclers' equal protection claim, and denied summary judgment on the police power claim, citing the existence of disputed facts. As for the dormant Commence Clause, the district court concluded that Measure E discriminated against interstate commerce in effect. Accordingly, the court applied strict scrutiny, determined the Ordinance could not survive, and granted summary judgment in favor of the recyclers. The district court also exercised supplemental jurisdiction over the recyclers' CIWMA claim under 28 U.S.C. § 1367 and held that Measure E was preempted by state law.

Kern timely filed this appeal, challenging only the district court's rulings on the dormant Commerce Clause and state-law preemption claims.

II

We first assess whether the recyclers have standing to bring suit under the dormant Commerce Clause. That inquiry involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Constitutional [or "Article III"] standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to make out a concrete 'case' or 'controversy' to which the federal judicial power may extend under Article III, § 2." *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). These limits are jurisdictional: they cannot be waived by any party, and there is no question that a

court can, and indeed must, resolve any doubts about this constitutional issue sua sponte. *See, e.g.*, *Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1064-65 (9th Cir. 2008). Here, no party contends the recyclers lack Article III standing, and we are independently satisfied that they have met the requirements of *Lujan*.

Over and above the limits of Article III, however, there exists a body of "judicially self-imposed limits on the exercise of federal jurisdiction," *Allen v. Wright*, 468 U.S. 737, 751 (1984), "founded in concern about the proper—and properly limited—role of the courts in a democratic society," *Warth*, 422 U.S. at 498. Citing their nonconstitutional nature, we have previously held that these requirements, commonly referred to as "prudential" standing, "can be deemed waived if not raised in the district court." *Bd. of Natural Res. v. Brown*, 992 F.2d 937, 946 (9th Cir. 1993).[3]

## A

Because Kern admittedly failed to raise prudential standing before the district court,[4] we must satisfy ourselves that we should address the matter in the first instance. At times, we have exercised our prerogative to "deem" this issue waived in such circumstances. *See, e.g.*, *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1087 n.6 (9th Cir. 2003); *Pershing Park*, 219 F.3d at 899-900. Past practice, however, does not preclude

---

[3]Other circuits have taken a different tack. *See Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1357-58 (D.C. Cir. 2000) (prudential standing is non-waivable); *Cmty. First Bank v. Nat'l Credit Union Admin.*, 41 F.3d 1050, 1053 (6th Cir. 1994) (same); *Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) (same).

[4]Kern's appeal was confined to the district court's rulings on the federal constitutional question and state law preemption. We had concerns, however, as to whether the recyclers had prudential standing to bring this claim under the dormant Commerce Clause. Accordingly, we directed the parties to discuss the issue at oral argument and requested that they file supplemental briefs.

our consideration of the subject in the case at hand. Rather, the permissive language in our caselaw—"can be deemed"—indicates that the choice to reach the question lies within our discretion. We are also mindful of the Supreme Court's description of constitutional *and* prudential standing as "threshold determinants of the propriety of judicial intervention." *Warth*, 422 U.S. at 518.

The Seventh Circuit's opinion in *Mainstreet Organization of Realtors v. Calumet City*, 505 F.3d 742 (7th Cir. 2007), is instructive. In that case, the court reached the issue of prudential standing, despite the "wrinkle" that "the City did not argue [prudential standing] until [the panel] raised the issue at oral argument." *Id.* at 747. "[N]onconstitutional lack of standing," according to the Seventh Circuit, "belongs to an intermediate class of cases in which a court can notice an error and reverse on the basis of it even though no party has noticed it and the error is not jurisdictional, at least in the conventional sense." *Id.*; *see also id.* at 747-48 (citing failure to exhaust state remedies in habeas cases and abstention as examples); *cf. Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) ("[A]pplication of the *Totten* rule of dismissal, like the abstention doctrine . . . *or the prudential standing doctrine*, represents the sort of 'threshold question' we have recognized may be resolved before addressing jurisdiction." (emphasis added) (citation omitted)).

Thus, we may cite a party's "failure to invoke [prudential standing]" as "a ground for refusing to invoke it" on our own initiative: such failure, however, does not bar our examination of the matter. *Mainstreet*, 505 F.3d at 749. "In other words, [we] may raise an unpreserved prudential-standing question on [our] own, but unlike questions of constitutional standing, [we are] not obliged to do so." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008).

We recognize that at times, the "prudential objectives[ ] thought to be enhanced" by standing restrictions "cannot be

furthered" by consideration of an unpreserved argument. *See Craig v. Boren*, 429 U.S. 190, 193-94 (1976). Here, we have provided the parties with an opportunity fully to brief the issue, and further development of the record would not aid our decisionmaking process. Those briefs indicate that at least one of the parties (Kern) "resist[s]" an "authoritative . . . determination" by this court. *Id.* at 193. Our disposition of the prudential standing question might also affect the district court's decision under 28 U.S.C. § 1367 to exercise jurisdiction over the state-law claims.

Perhaps most importantly, a ruling on prudential standing could obviate the need to rule on the merits of the dormant Commerce Clause challenge. In such circumstances, "we are guided by the traditional principle that a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available. This rule against unnecessary constitutional adjudication applies even when neither the trial court nor the parties have considered the nonconstitutional basis for decision." *Correa v. Clayton*, 563 F.2d 396, 400 (9th Cir. 1977) (internal quotation marks and citations omitted).

**[1]** Accordingly, we choose to exercise our discretion to rule on the recyclers' prudential standing to bring this suit.

B

**[2]** Several doctrines fall under the rubric of "prudential standing." Here, we consider only "the zone of interests test[, which] governs claims under the Constitution in general, and under the negative [dormant] Commerce Clause in particular." *Individuals for Responsible Gov't, Inc. v. Washoe County*, 110 F.3d 699, 703 (9th Cir. 1997) (second alteration in original) (internal quotation marks and citation omitted); *see also Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 396 (1987) (noting that interests must be "arguably within the zone of interests to be protected or regulated by the statute or constitu-

tional guarantee in question" (internal quotation marks and citation omitted)). While the test "is not meant to be especially demanding," *Clarke*, 479 U.S. at 399, a party's "complaint must 'fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' " *Washoe County*, 110 F.3d at 703 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982)). Thus, this prudential standing requirement "denies a right of review if the plaintiff's interests are . . . marginally related to or inconsistent with the purposes implicit in the [relevant constitutional provision]." *Id.* (alterations in original) (internal quotation marks and citation omitted).

**[3]** Accordingly, to "ascertain whether [the recyclers] have standing to raise the dormant Commerce Clause challenge in the present case, [we] must . . . determine[ ] whether their interests bear more than a marginal relationship to the purposes underlying the dormant Commerce Clause." *Id.* We have previously concluded that the "chief purpose underlying [the] Clause is to limit the power of States to erect barriers against interstate trade." *Id.* (internal quotation marks and citation omitted); *see also Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Res.*, 504 U.S. 353, 359 (1992) ("[T]he 'negative' or 'dormant' aspect of the Commerce Clause prohibits States from 'advanc[ing] their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state.' " (alternation in original) (quoting *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949))).[5] The question, therefore, is whether the recyclers' claims "bear more than a marginal relationship" to claims addressing a state or county's effort to erect barriers to interstate commerce.

---

[5]A state's political subdivisions are likewise precluded from impeding interstate commerce. *See, e.g.*, *Carbone*, 511 U.S. at 390.

Our decision in *Washoe County* provides the answer to this question. In that case, we addressed Nevada county ordinances which required residents to employ garbage collection services run by "the County and its authorized agents or contractees." *Washoe County*, 110 F.3d at 701. "[P]rior to enactment of the ordinances, [some residents had] transported their garbage across state lines for disposal at the dump sites in . . . California." *Id.* at 703. Displeased with paying for a service they did not desire, these residents brought suit, alleging that the ordinance violated the dormant Commerce Clause insofar as it "prevent[ed] them from utilizing dump sites outside the State of Nevada." *Id.* at 702. We held that though the residents met the constitutional requirements for standing, they failed to satisfy the prudential limitations. *Id.* at 702, 704. Paying for unwanted garbage collection services—even if one had previously dumped out of state—was "an injury not even marginally related to the purposes underlying" the Clause. *Id.* at 703. We posited that even if all residents forced to pay for garbage collection services had previously transported their waste across state lines, the litigants' claim could not meet the zone of interests test. "Their injury (being forced to pay for services they did not want) would exist even if the [garbage collection service] were to dump all the garbage it collects from Nevada across the state line in California. Under those circumstances, the Washoe County ordinance would impose no barrier to interstate commerce." *Id.* at 703-04; *see also On the Green Apartments L.L.C. v. City of Tacoma*, 241 F.3d 1235, 1239-40 (9th Cir. 2001) (reaching the same conclusion with respect to a similar waste disposal ordinance).

**[4]** Such analysis controls the case at hand. The interest the recyclers seek to secure is their ability to exploit a portion of the *intra*state waste market—they want to be able to ship their waste from one portion of California to another. But as we have said, the "chief purpose underlying [the dormant Commerce] Clause is to limit the power of States to erect barriers against *inter*state trade." *Washoe County*, 110 F.3d at 703 (emphasis added) (internal quotation marks and citation omit-

ted). Nothing in Measure E hampers the recyclers' ability to ship waste out of state. Likewise, no recycler claims to apply out-of-state waste to land in Kern County. In short, Measure E in no way burdens the recyclers' protected interest in the interstate waste market. We decline to expand the zone of interests protected by the Clause to purely intrastate disputes.

[5] The recyclers miss the point when they contend that if Measure E stands, some of them will be forced to pay higher fees to ship their waste to different sites, likely in Arizona. While this injury-in-fact suffices for Article III purposes, *see Washoe County*, 110 F.3d at 702, it is insufficient to establish prudential standing. As the name implies, the zone of interests test turns on the *interest* sought to be protected, not the *harm* suffered by the plaintiff. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970) ("[The zone of interests test] concerns . . . the question whether the *interest* sought to be protected by the complainant is arguably . . . protected or regulated by the statute or constitutional guarantee in question." (emphasis added)). Financial injury, standing alone, does not implicate the zone of interests protected by the dormant Commerce Clause. That financial injury must somehow be tied to a barrier imposed on interstate commerce. The recyclers here have not established that requisite link.[6] Like the residents in *Washoe County*, they would suffer the same injury (being forced to pay higher prices for biosolid disposal) if Measure E permitted land application from *out-of-state* entities, but prohibited land application from *in-state* entities. "Under those circumstances," Measure E would "impose no barrier to interstate commerce," *Washoe County*, 110 F.3d at 704, yet the harm to the recyclers would be the same.[7] There-

_____

[6]The recyclers contend that they generally engage in interstate commerce and that the Supreme Court has described waste as an article of interstate commerce. *See Fort Gratiot*, 504 U.S. at 359. Neither fact, however, links the financial injury they allege in this case with an impediment to interstate commerce.

[7]For this reason, the recyclers' claims are more analogous to the claims of the residents in *Washoe County*, *see* 110 F.3d at 703; *On the Green*, 241

fore, we cannot conclude that the recyclers alleged injury is tied to the purposes animating the dormant Commerce Clause.

In their supplemental brief, the recyclers discuss a number of cases where courts have determined that in-state plaintiffs have prudential standing to bring suit under the dormant Commerce Clause. *See, e.g.*, *Carbone*, 511 U.S. at 387-88; *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286-87 (1997); *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 97-98 (1994); *Huish Detergents*, 214 F.3d at 711-12. All of those cases, however, involve impediments to in-state plain-tiffs' access to out-of-state markets, restrictions on the ability of out-of-state entities to make use of in-state plaintiffs' ser-vices, or burdens on out-of-state entities which were passed on to in-state plaintiffs. *See Carbone*, 511 U.S. at 388; *Tracy*, 519 U.S. at 286-87; *Or. Waste Sys.*, 511 U.S. at 96-97; *Huish Detergents*, 214 F.3d at 711.[8] No such allegations are present in this case. Rather, the recyclers either contend that Measure E prevents them from shipping their waste intrastate, or that they are denied the benefits of such shipments. As we have discussed above, such circumstances do not implicate the interests protected by the dormant Commerce Clause.

**[6]** Accordingly, because the recyclers' injury is not even "marginally related" to the interests the Clause seeks to safe-

---

F.3d at 1239-40, than the apartment complex in *On the Green*, *see* 241 F.3d at 1241. Moreover, the ordinance in *On the Green* barred the plaintiff from engaging in interstate commerce. Measure E creates no such prohibi-tion. *Cf. Huish Detergents, Inc. v. Warren County*, 214 F.3d 707, 711 (6th Cir. 2000) (concluding that prudential standing was established when plaintiffs' financial injury would disappear "if it could hire a waste hauler to transport its waste *out-of-state*" (emphasis added)).

[8]In *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 115 F.3d 1372 (8th Cir. 1997), the Eighth Circuit found that in-state haulers and processors had standing to challenge a local ordinance that required waste designated for in-state disposal to pass through designated facilities. *Id.* at 1377-79. That decision was made in a single, conclusory sentence, which we decline to follow. *Id.* at 1379.

guard, they lack prudential standing to bring their federal constitutional claim.

## III

**[7]** Based on the foregoing, we dismiss the recyclers' claims under the dormant Commerce Clause. With that, we are left with a complex question of state-law preemption. Because our dismissal of the federal constitutional claim may materially alter the district court's decision to exercise supplemental jurisdiction over the preemption claim, *see, e.g.*, *Golden v. CH2M Hill Hanford Group, Inc.*, 528 F.3d 681, 684 (9th Cir. 2008), we vacate its judgment and remand the state-law claim for reconsideration of the factors listed in 28 U.S.C. § 1367.

DISMISSED in part, VACATED in part, and REMANDED.